# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEOUL LASER DIEBOARD SYSTEM CO., LTD., a South Korean corporation,<br><br>    Plaintiff-Counterdefendant,<br><br>v.<br><br>COMPUTERIZED CUTTERS, INC., a Texas corporation,<br><br>    Defendant-Counterclaimant. | CASE NO. 15-cv-1212-H-DHB<br><br>**ORDER**<br><br>**(1) GRANTING IN PART SEOUL LASER DIEBOARD SYSTEM CO., LTD.'S MOTION TO DISMISS COUNTERCLAIMS**<br><br>**(2) DENYING SEOUL LASER DIEBOARD SYSTEM CO., LTD.'S MOTION TO STRIKE DEFENSES**<br><br>[Doc. No. 33.] |

On June 22, 2015, Seoul Laser Dieboard System Co., Ltd. ("SDS") filed this case against Computerized Cutters, Inc. ("CCI"), asserting claims for breach of contract and patent infringement. (Doc. No. 1.) On September 8, 2015, CCI filed an answer and countercomplaint. (Doc. No. 23.) On September 29, 2015, CCI filed an amended answer and countercomplaint. (Doc. No. 30.) On October 15, 2015, SDS moved to dismiss two of CCI's counterclaims and strike seven of its affirmative defenses. (Doc. No. 33.) CCI responded on November 9, 2015. (Doc. No. 35.) SDS replied on November 16, 2016. (Doc. No. 38.) On November 18, 2015, the Court submitted the motions on the filings pursuant to Civil Local Rule 7.1(d)(1). (Doc. No. 41.) For the reasons set forth below, the Court grants in part and denies in part SDS's motion to dismiss and denies its motion to strike.

# BACKGROUND

**A.    The Complaint**

In its complaint, SDS asserts one claim for breach of contract and six claims of patent infringement. (Doc. No. 22.)[1] SDS is a South Korean corporation with its principal place of business in San Diego, California. (Id. ¶ 7.) SDS is in the machine tooling business, developing technology and producing products for bending and cutting metallic and other related materials. (Id. ¶ 9.) With the sale of its machines, including its EasyBender machines, SDS has captured approximately 80% of the U.S. market for die-cutting, folding, and bending machines. (Id. ¶ 10.) SDS is the current assignee of U.S. Patent No. 6,128,940 ("the '940 patent"); U.S. Patent No. 5,870,919 ("the '919 patent"); U.S. Patent No. 6,405,574 ("the '574 patent"); U.S. Patent No. 5,787,750 ("the '750 patent"); U.S. Patent No. 7,694,543 ('the '543 patent"); and U.S. Patent No. 8,327,679 ("the '679 patent"). (Id. ¶¶ 14–19.)

CCI is a Texas corporation. (Id. ¶ 8.) Like SDS, CCI operates in the machine tooling business and makes, uses, and sells machine tools for bending metallic material, including the Accu-Bend machine. (Id. ¶ 11.) According to SDS, CCI has slavishly copied SDS's technology and uses it in all of CCI's machines. (Id. ¶¶ 23–24.)

Before June 2007, SDS discovered that CCI was infringing one or more claims in at least three of its patents, the '940 patent, the '919 patent, and the '574 patent. (Id. ¶ 26.) In June 2007, SDS filed an infringement action against CCI in this district, Seoul Laser Dieboard System Co. Ltd. v. Computerized Cutters, Inc., No. 7-cv-1005 JAH (CAB). (Id. ¶ 27.) In December 2007, the parties entered a settlement agreement and dismissed the case. (Id. ¶¶ 30–36.) They agreed, among other things, to keep certain aspects of their settlement confidential. (Id. ¶¶ 31, 38–39.) They also agreed that if either party breached, the other party would have the right to terminate after serving notice of the breach and allowing a sixty-day cure period. (Id. ¶ 35.)

---

[1] Doc. No. 22 is a less redacted version of the initial complaint, Doc. No. 1. SDS filed an unredacted version under seal. (Doc. No. 18.)

On March 6, 2012, CCI notified SDS of a material breach of the agreement by SDS. (Id. ¶¶ 38–40.) According to SDS, it took immediate steps to cure the alleged breach. (Id. ¶ 41.) On March 15, 2012, SDS sent CCI a letter describing its efforts. (Id. ¶ 42.) SDS received no further communication about any breach until February 1, 2013, when CCI informed SSD that CCI was continuing to evaluate the breach and would continue to perform its obligations under protest, pending a judicial determination of the impact of SDS's failure to cure. (Id. ¶ 43.) On April 27, 2015, SDS notified CCI that CCI had failed to fulfill its obligations under the agreement during 2013, 2014, and part of 2015, and SDS intended to pursue legal action if CCI did not correct the problem. (Id. ¶ 48.) CCI responded that it was refusing to perform based on SDS's 2012 breach and a second occurrence in 2014, and that it was exercising its right to terminate the agreement. (Id. ¶ 50.) CCI also claims that its products have been redesigned and do not infringe SDS's patents. (Id. ¶ 52.) SDS disagrees. (Id. ¶¶ 61–96.)

**B.    The Answer and Countercomplaint**

In its amended answer and countercomplaint, CCI denies that it is infringing SDS's patents. (Doc. No. 30 ¶ 3.) According to CCI, the agreement terminated automatically on May 7, 2012, sixty days after CCI notified SDS of its material breach. (Id. ¶ 49.) Additionally, CCI claims that agreement also terminated after CCI redesigned its product and sold more than 47 units, the number of units required for termination under the agreement. (Id.) CCI asserts twelve affirmative defenses: (1) failure to state a claim; (2) estoppel; (3) consent; (4) unclean hands; (5) res judicata / collateral estoppel; (6) release / waiver; (7) prior material breach; (8) condition precedent; (9) lack of Article III standing; (10) statute of limitations; (11) laches; and (12) reservation to assert other defenses. (Id. ¶¶ 71–88.) CCI also asserts three counterclaims: (1) declaratory judgment; (2) unfair competition under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; and (3) breach of contract. (Id. ¶¶ 108–20.)

## DISCUSSION

**A.     Motion to Dismiss**

SDS moves to dismiss two of CCI's three counterclaims under Federal Rule of Civil Procedure 12(b)(6) and 9(b). (Doc. No. 33 at 2.) A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Generally, a complaint must satisfy only the minimal notice requirements of Federal Rule of Civil Procedure 8(a)(2) to avoid dismissal on a Rule 12(b)(6) motion. See Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint can be dismissed only if it "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotation marks omitted).

Separately, Federal Rule of Civil Procedure 9(b) provides that a party must plead the circumstances of fraud with particularity, including the "who, what, when, where, and how of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). A motion to dismiss for failure to plead with the requisite particularity "is the functional equivalent of a motion to dismiss under Rule 12(b)(6)." Id. at 1107.

**1.     Declaratory Judgment**

In its counterclaim for declaratory relief, CCI requests a judicial determination of the parties' rights and duties under the agreement. (Doc. No. 30 ¶¶ 108–112.)

SDS contends that the Court should dismiss this counterclaim because it is duplicative of CCI's breach-of-contract counterclaim, its affirmative defenses, and other matters already before the court. (Doc. No. 33-1 at 17–20.) The Court declines to dismiss the declaratory-judgment counterclaim on this ground.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Declaratory Judgment Act gives courts "unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286–87 (1995); see Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 533 (9th Cir. 2008) ("[I]t is within a district court's discretion to dismiss an action for declaratory judgment.").

While SDS has cited cases where courts dismissed declaratory judgment claims brought alongside the same substantive claims, courts are not required to do so. See Fed. R. Civ. P. 57 advisory committee note ("[T]he fact that another remedy would be equally effective affords no ground for declining declaratory relief."); Powell v. McCormack, 395 U.S. 486, 518 ("[A] request for declaratory relief may be considered independently of whether other forms of relief are appropriate."). Additionally, CCI has alleged a dispute over the scope of agreement. (See Doc. No. 30 ¶ 81.) Accordingly, the Court declines to dismiss CCI's counterclaim for declaratory relief.

**2.  Unfair Competition**

CCI's second counterclaim is for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. The UCL establishes three distinct types of unfair competition that are independently actionable: "unlawful," "unfair," and "fraudulent." See Cal. Bus. & Prof. Code § 17200; Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). CCI alleges:

> 114. SDS has engaged in unlawful, unfair or fraudulent business practices . . . in connection with its relationship with CCI including, but not limited to the systematic violation of the terms of the Confidential

> License Agreement through countless improper disclosures of the existence of that agreement, disclosure of the content of that agreement and utilization of the existence and terms of the agreement to promote its products and to denigrate, disparage and cast aspersions upon the Accu-Bend machine made by CCI.
>
> 115. SDS's conduct, including its false promises to keep the Confidential License Agreement confidential, and its ongoing violations of Section 7.1 to gain competitive advantage over CCI violated the UCL.

(Doc. No. 30 ¶¶ 114–15.) SDS contends that the Court should dismiss this counterclaim because CCI has not adequately alleged that SDS engaged in any unlawful, unfair, or fraudulent conduct. (Doc. No. 33-1 at 10–15.) The Court agrees.

### a. Fraudulent

SDS contends that CCI's "fraudulent" counterclaim fails because CCI did not allege that members of the public would have been deceived, and the allegations are also insufficiently particular under Rule 9(b). (Doc. No. 33-1 at 14–16.) For UCL purposes, "a fraudulent business practice is one in which members of the public are likely to be deceived." Morgan v. AT&T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1254 (2009) (internal quotation marks omitted). Sophisticated companies are not members of the general public. See Rosenbluth Int'l, Inc. v. Superior Court, 101 Cal. App. 4th 1073, 1077–79 (2002). "Though many courts have described the scope of business activities prohibited by § 17200 in sweeping terms, there is no case authority that 'fraudulent' business acts are separately actionable by business competitors absent a showing that the public, rather than merely the plaintiff, is likely to be deceived." Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc., 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001). As a result, CCI is "ineligible to bring a claim under the fraudulent prong for any alleged misrepresentations." Cappella Photonics, Inc. v. Cisco Sys., Inc., 77 F. Supp. 3d 850, 866 (N.D. Cal. 2014).

CCI concedes that its allegations are insufficiently particular under Rule 9(b). (Doc. No. 35 at 20.) It requests leave to amend and asserts that it has alleged facts that also constitute false advertising under § 43(a)(1)(B) of the Lanham Act and common law trade libel. (Id.) Both theories require a false statement. See Jarrow Formulas,

Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 n.4 (9th Cir. 2002) (false advertising under the Lanham Act); In re Kasler, 611 F.2d 308, 311 (9th Cir. 1979) (trade libel). Here, CCI claims that SDS disclosed confidential true information, not that it made false statements. Accordingly, the Court dismisses CCI's "fraudulent" UCL claim.

### b.     Unfair

Next, SDS contends that CCI's "unfair" counterclaim fails because CCI did not allege any injury to competition. (Doc. No. 33-1 at 12–14.) In cases between business competitors, the California Supreme Court has imposed special rules:

> [W]e must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition. We thus adopt the following test: When a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

Cel-Tech, 20 Cal. 4th at 186–87. "Injury to a competitor is not equivalent to injury to competition; only the later is the proper focus of antitrust laws." Id. at 186. Here, CCI has alleged only an anti-competitive injury to itself, thus falling short of a cognizable "unfair" claim under Cel-Tech.

CCI proposes that, if necessary, it can allege that SDS is engaging in bad-faith patent litigation and patent misuse. (Doc. No. 35 at 18.) Both types of conduct can be anti-competitive. See Handguards, Inc. v. Ethicon Inc., 601 F.2d 986, 993 (9th Cir. 1979) (bad-faith litigation); C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1372–73 (Fed. Cir. 1998) (patent misuse). But these allegations are not in the present complaint, and CCI acknowledges its belief "that this action is a simple breach of contract and licensing dispute that can be resolved solely on contract law." (Doc. No. 35 at 19.) Accordingly, the Court dismisses CCI's "unfair" claim.

### c.     Unlawful

SDS contends that CCI's "unlawful" counterclaim fails because CCI did not adequately plead that SDS engaged in unlawful conduct. (Doc. No. 33-1 at 11–12.)

The "unlawful" prong of the UCL borrows violations of other laws and makes them separately actionable. See Klein v. Chevron U.S.A., Inc., 202 Cal. App. 4th 1342, 1383 (2012). Virtually any statute, law, or regulation can serve as a predicate for a UCL unlawful-practice violation. See id. But violations of the common law, such as breach of contract, are insufficient to support a UCL unlawful claim. See Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1044 (9th Cir. 2010) ("[A] common law violation such as breach of contract is insufficient."); Boland, Inc. v. Rolf C. Hagen (USA) Corp., 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010) ("A breach of contract, and by extension, a breach of the implied covenant of good faith and fair dealing, is not itself an unlawful act for purposes of the UCL."). Accordingly, this counterclaim fails to the extent that it is premised solely on violations of the common law.

CCI points out, correctly, that "breach of contract may form the predicate for Section 17200 claims, provided it also constitutes conduct that is unlawful, or unfair, or fraudulent." Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal. App. 4th 638, 645 (2008) (ellipsis, emphasis, and internal quotation marks omitted). But CCI has alleged only breach of contract, without any additional unlawful, unfair, or fraudulent conduct as those terms apply to business competitors under the UCL. Accordingly, the Court dismisses CCI's "unlawful" UCL claim. The Court declines to grant leave to amend at this time.

**B.   Motion to Strike**

SDS also argues that the Court should strike seven of CCI's affirmative defenses. (Doc. No. 33-1 at 20–23.) Federal Rule of Civil Procedure 12(f) permits courts to strike "an insufficient defense" from a pleading. The purpose of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Sydney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." Kohler v. Islands Restaurants, LP, 280 F.R.D.

560, 563–64 (S.D. Cal. 2012). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1023 (9th Cir. 2010) (internal quotation marks omitted).

SDS asserts that the Court should strike CCI's first and twelfth defenses, failure to state a claim and reservation of the right to assert other defenses, because they are not true affirmative defenses. (Doc. No. 33-1 at 20–21, 23.) But motions to strike are disfavored. See Kohler, 280 F.R.D. at 563–64. Accordingly, the Court declines to strike these items.

SDS also argues that CCI's defenses of estoppel, consent, unclean hands, and laches do not give fair notice because CCI has not pleaded the elements of these defenses or alleged facts to support them. (Doc. No. 33-1 at 21–22.) In this case, however, the lengthy history between the parties alleged in the relevant complaints provides the necessary factual content. Accordingly, the Court also declines to strike these defenses.

Last, SDS asserts that the Court should strike CCI's statute-of-limitations defense because the dates alleged in the complaint are all within the limitations period and CCI does not dispute them. (Doc. No. 33-1 at 22–23.) Once an affirmative defense has been properly pleaded, however, a motion to strike should not be granted unless it "appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense." Barnes v. AT&T Pension Benefits Plan, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (internal quotation marks omitted). Accordingly, the Court denies SDS's motion to strike CCI's statute-of-limitations defense as well.

/ / /
/ / /
/ / /
/ / /

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part SDS's motion to dismiss, and denies SDS's motion to strike. (Doc. No. 33.) Specifically, the Court denies SDS's motion to dismiss CCI's declaratory-judgment counterclaim, but grants SDS's motion to dismiss CCI's UCL counterclaim without leave to amend at this time. The Court declines to dismiss any of CCI's affirmative defenses.

**IT IS SO ORDERED.**

DATED: November 20, 2015

*/s/ Marilyn L. Huff*
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT